Hudson River Cement Co. *v.* The Emperor and The E. H. Garrison.[1]

*(District Court, S. D. New York.   May 5, 1891.)*

Collision — Steam-Vessels Meeting—Lookout — Proximate Cause — East River Navigation.
    The tug G., with a tow, was going down the East river about dusk.  She had no lookout other than her pilot.   A ferry-boat coming out of her slip crossed ahead of the tug's course, attracting the attention of her pilot, so that he did not see the tug E., which, with a tow, was coming up stream, about 150 feet off the piers, in plain sight of the G., and giving her repeated signals.   The G. collided with the tow of the E.   *Held,* that the failure of the G. to have a lookout was the cause of the collision, rendering the G. liable therefor; that the navigation of the E. near the shore, though contrary to the state statute, afforded such abundant time and space for avoiding collision as not to constitute a proximate cause of it, and was immaterial.

In Admiralty.   Suit to recover damages caused by collision.
*Goodrich, Deady & Goodrich,* for libelants.
*Carpenter & Mosher,* for the Emperor.
*Alexander & Ash,* for the E. H. Garrison.

Brown, J.   The tug Garrison, in going down the East river about dusk on November 19, 1890, came in collision, a little above Catharine ferry-slip, with the libelant's barge Isabella, in tow along-side of the tug Emperor going up, about 150 feet only off the end of the piers.    The account of the collision given by the pilot of the Garrison is that, as he was going down in about mid-river, a ferry-boat came out of the Roosevelt ferry-slip, which is immediately above the East River bridge abutment, and gave him a signal of one whistle, in obedience to which, he ported his wheel to go to the right; and that as the ferry-boat passed him

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

she opened up under her stern the Emperor and her tow, so near to the Garrison that collision was then unavoidable. On examination I find it quite impossible to accept this theory of the collision on the ebb-tide. The collision could not have occurred where it did occur had the Emperor with her tow come up from below the ferry-boat as the latter came out from her slip. The men on the Emperor must also in that case have inevitably seen the ferry-boat, and several of their witnesses testify that no ferry-boat was seen. There can be no doubt that, if the ferry-boat came out at the time stated by the Garrison's pilot, she came out astern of the Emperor, and that the Emperor and her tow were all the time in full view, both lights and hulls, it not being yet dark. The Garrison had no lookout, and it is probable that the ferry-boat engaged all the pilot's attention, so that the Emperor and her tow were not noticed until quite near. The case is one of those in which the absence of a lookout proper on the tug, as required by law, becomes material. The omission of the lookout, though often immaterial, is always at the tug's risk. The Emperor twice gave timely signals to the Garrison, which were also unnoticed. There was plenty of time and space for the Garrison to have avoided running into the tow. At the collision she had changed her course about 10 points, and was heading 2 points up river. Though the Emperor was navigating near the New York shore, and not in mid-river, as required by statute, yet, as she was in plain view, and gave repeated signals in time, and as there was abundant space for the Garrison to have avoided running into her tow had any proper attention been given her, the fault is deemed that of the Garrison only; and the Emperor's navigation in the wrong part of the river is treated as not the proximate cause of the collision, and immaterial. *The Francis,* 44 Fed. Rep. 510, 512. Decree for libelant with costs as against the Garrison, and libel dismissed with costs as respects the Emperor.